

ABRAMS INSTITUTE FOR FREEDOM OF EXPRESSION

# Yale Law School

December 1, 2025

*__Via CM/ECF__*

Hon. Esther Salas, U.S.D.J.
Hon. Jessica S. Allen, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut St.
Newark, New Jersey 07101

**Re:**   *Morrill et ano. v. Fulop et al.,* **Docket Nos.: 2:23-CV-23197-ES-JSA**

Dear Your Honors:

We represent Plaintiffs, Aaron Morrill and The Jersey City Times LLC ("Plaintiffs"), in this civil action. The Parties jointly submit this letter in response to the Court's request for a report on whether the Parties have completed written discovery. For the reasons set forth below, written discovery is not complete, and the parties respectfully request the Court's intervention. *See* Dkt. 78, 80. Intervention by the Court is needed.

## I.    Joint Summary of Case Status

Plaintiffs filed this § 1983 lawsuit on December 18, 2023, Dkt. 1, and amended their complaint on March 14, 2024, Dkt. 19. Defendants moved to dismiss the amended complaint on April 25, 2024. Dkt. 26. That motion is fully briefed and pending. Dkt. 35, 36, 37. Oral argument on the motion to dismiss was held on October 21, 2025, and the Parties are awaiting the Court's decision.

On August 14, 2024, the Court denied Defendants' request to stay discovery, Dkt. 39, and entered a pretrial scheduling order setting April 30, 2025, as the fact discovery deadline. Dkt. 40. The fact discovery deadline was subsequently extended to June 17, 2025. Dkts. 52, 53. Numerous discovery disputes arose during the paper discovery process, as reflected in letters to the Court on June 17, 2025 (Dkt. 61), August 4, 2025 (Dkt. 64), and August 8, 2025 (Dkt. 65). In response to these letters, the Court ordered the Parties to resume their efforts to resolve the discovery disputes among themselves. Dkt. 66 (deadline extended, Dkt. 71).

The Parties met and conferred on September 23, 2025. By joint letter dated October 13, 2025, the Parties advised the Court that "their outstanding discovery disputes have been resolved or are pending resolution, as outlined" in certain joint representations that were set forth in the

letter. Dkt. 74. The Court then ordered the Parties to advise it by November 24, 2025, whether the written discovery was indeed complete. Dkt. 75.

For the reasons set forth in "Defendants' Position" below, no additional discovery was produced following the October 13 joint letter. On November 7, 2025, Plaintiffs noticed the deposition of Defendant Fulop and notified the Court of their reasons for proceeding with depositions. Dkt. 78. The Court ordered Defendants to respond to that letter. Dkt. 79. Defendants did so on November 17, 2025. Dkt. 80.

## II.    Plaintiffs' Position

Plaintiffs submit that two issues require the Court's intervention: (1) Defendants' failure to produce the documents they committed to produce in the October 13, 2025, joint letter, and (2) Defendants' objection to proceeding with depositions while their motion to dismiss remains pending.

### A.    Written discovery.

Defendants' discovery-related conduct reflects a troubling pattern of promises made and promises broken. Their latest refusal to provide the discovery agreed upon just weeks ago reflects another attempt to manufacture the stay of discovery this Court has twice denied. Dkt. 39, Dkt. 71.

Defendants agreed to produce their remaining written discovery by the end of October only after the Court indicated it would rule on the many discovery failures pending before the Court unless the Parties cooperated in narrowing the disputes. *See* Dkt. 61, 64, 66, 71. On November 17, 2025, Defendants reneged on this commitment, telling the Court that the statute of limitations argument made by Plaintiffs at oral argument on October 21, 2025, somehow rendered the promised discovery irrelevant—a position never previously conveyed to Plaintiffs. Dkt. 80.[1] But Plaintiffs' statute of limitations argument was clearly laid out in their July 2024 opposition to the motion to dismiss. *See* Dkt. 36 at 36. Defendants were fully aware of this position long before they promised to produce the requested documents on September 23, 2025.

---

[1] Defendants assert that they intended to communicate this abrupt reversal to Plaintiffs directly, but that Plaintiffs never gave them the opportunity. *See infra* n. 7. This is not correct. After Defendants missed their deadlines to fulfill the promises they made in the October 13 letter to the court, Plaintiffs followed up on October 27 (no response), October 29 (no response), and November 1. On November 4, Defendants' counsel responded, "**we are still working with our clients on these items and will get back to you accordingly**." Plaintiffs' counsel responded within minutes to ask for a firm timeline and to inform Defendants counsel that Plaintiffs intended to write to the Court if Defendants could not provide a meaningful response. Defendants still had not responded to this message three days later, when Plaintiffs wrote to the Court. Dkt. 78.



Nor does Plaintiffs' position on the statute of limitations render the promised documents irrelevant or unduly burdensome in any event. Those documents include emails and versions of Defendants' press list needed to establish how Defendants treated Plaintiffs *before* the retaliation began, when Defendants first removed Plaintiffs from their press distribution list, and when, if ever, Defendants returned them to the list—verifiable facts Defendants refuse to admit or provide through interrogatory answers. *See* Dkt. 61 at 7 (discussion of Interrogatories 7-9, 11, 13, and 24); Dkt. 64 (same). This evidence is relevant to the causation element of Plaintiffs' retaliation claim and to whether Plaintiffs were treated differently from similarly situated publications, an element of their Equal Protection and Equal Access claims. Such evidence is both relevant and admissible, even where it falls outside the statute of limitations. *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002).

Likewise, the burden of retrieving and producing this essential evidence is reasonable. Not only did Defendants agree to produce this narrow slice of documents as part of a compromise during the September 23rd meet-and-confer, but the records requested are *public documents* that Defendants would be obligated by New Jersey law to produce to any member of the public who asked for them. Defendants' remaining arguments regarding burden simply rehash the same points they have voiced time and again regarding the merits; they are wrong, for the reasons set forth in Dkt. 36 at 9.

Plaintiffs have completed their production of requested documents. Defendants raised no issue at all with Plaintiffs' discovery responses during their lengthy meet and confer session on September 23, and have not attempted to conference any discovery issues since then. The only open issue Defendants raised with the Court following that meet and confer was the need for a privilege log supporting Plaintiffs' claims of journalistic privilege. Dkt 74. Plaintiffs have set out their position regarding this issue multiple times, *see* Dkt. 61, Dkt. 74, and believed it to be resolved as part of the Parties joint efforts to narrow the outstanding discovery disputes. Defendants now object that Plaintiffs have not produced financial records, Dkt. 80, ignoring Plaintiffs' production of profit-and-loss forms from Jersey City Times's 2019-2024 tax returns and disregarding that further disclosure is irrelevant given that no compensatory damages are sought. Without identifying a failure to answer any specific request, Defendants also suggest Plaintiffs have not demonstrated "they are in fact 'press'," Dkt. 80, ignoring records documenting membership in multiple press associations, news articles published by Plaintiffs, emails showing recognition of Plaintiffs as the press by Defendants and others, and other disclosures.[2]

---

[2] As Plaintiffs have explained in a previous submission, Dkt. 61, it is legally irrelevant whether Plaintiffs are members of the legacy media, hold credentials, or have online-only readership. The Jersey City Times is a bona fide news website. But even if it were not, it would nonetheless be entitled to be free from retaliation and discrimination for its speech and entitled to the reporter's



The Parties' respective positions on these discovery issues are fully set forth in prior submissions to the Court. *See* Dkt. 61, 64, 74, 80. Plaintiffs respectfully submit that these issues are ripe for resolution by the Court.

**B.      Depositions**

Plaintiffs noticed the deposition of Defendant Fulop for December 4, 2025, while he remains the incumbent Mayor of Jersey City. Defendants have indicated their objection to the deposition, claiming that Plaintiffs agreed to hold off all depositions until after the motion to dismiss is decided and raising a number of objections to the deposition.

Plaintiffs never agreed to stay depositions indefinitely, pending the outcome of the motion to dismiss. To the contrary, Plaintiffs opposed Defendants' request to stay "all discovery" in this case until the motion to dismiss had been decided, Dkt. 34, and the Court ruled in Plaintiffs' favor on that motion, Dkt. 39. Rather, Plaintiffs understood that depositions would not take place until after the close of paper discovery, but irrespective of the resolution of the motion to dismiss. This understanding comports with the Court's scheduling order, which set an April 2025 deadline for all fact discovery to close and, notably, did not bar any depositions or impose a separate deadline for completing depositions, but instead only marked as "TBD" the *number* of permissible depositions. Dkt. 40 ¶ 6.

To be sure, Plaintiffs, like Defendants, predicted and would have preferred that depositions take place after the motion to dismiss was resolved. The conversation the Parties had during the June 25, 2024 status conference reflected this shared preference, *see* Dkt. 34 at 2-3, and the sequencing of fact discovery was "designed to allow" this to occur. *See* Dkt. 45. But there was neither an agreement of the Parties nor an order of the Court precluding depositions while the motion remains pending. The Court ordered discovery to proceed on a separate track from the

---

privilege for any materials gathered for the purpose of reporting: namely with the intent to disseminate news information to the public. *In re Madden*, 151 F.3d 125, 129-30 (3d Cir. 1998). Defendants' citation to a case involving the White House's standards for granting press credentials is entirely irrelevant. *See infra* at 9 (citing *Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 83 (D.D.C. 2023)). Their assertion that journalists waive the reporter's privilege any time they sue to vindicate their rights is equally incorrect. *See infra* at 9 (citing *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979)). As an initial matter, *Riley* dealt with a nonparty reporter who was subpoenaed for information. *Riley,* 612 F.2d at 716. It involved no question of waiver. But even assuming that courts sometimes find waiver of reporter's privilege where reporters are plaintiffs, that waiver would come into play only where the claims put the privileged information at the heart of the case. This is miles away from such a case.



motion to dismiss, with a short period of paper discovery to be followed by a longer period for depositions. Dkt. 39, Dkt. 40.

Plaintiffs made clear their understanding of this sequencing of discovery in the February 26, 2025 joint letter to the Court, Dkt. 52, writing:

> Contrary to what Defendants assert below, there was no agreement that depositions remain in abeyance until after the motion to dismiss is decided . . . While Plaintiffs agree that the deadlines for depositions should be extended until after paper discovery has been completed, they strongly oppose any extension which is conditioned upon the outcome of the pending motion to dismiss.[3]

Plaintiffs did not and would not have agreed to hold depositions indefinitely.

Defendants' further objections to the deposition of Defendant Fulop are equally misdirected. The Third Circuit has never addressed whether *United States v. Morgan*, 313 U.S. 409, 422 (1941), applies to high-ranking officials in this Circuit, but even if it does, "extraordinary circumstances" justify deposing Defendant Fulop. Defendant Fulop is one of two named Defendants in this case, which arises from alleged wrongdoing that Defendant Fulop either directed or personally ratified. His personal involvement pervades the Complaint and has been borne out in paper discovery, as well as in his own public statements. *See, e.g.*, Dkt. 19 ¶¶ 43, 47, 48, 49, 52, 54, 81, 82. Defendant Fulop has first-hand knowledge of his own motivations and of private conversations referenced in Interrogatory Responses. His testimony is essential to Plaintiffs' constitutional claims and not available from other sources—no other witnesses can testify to Defendant Fulop's motives, deliberations, or decision-making. Moreover, Defendants have consistently declined to provide substantive responses to Interrogatory questions on these topics, asserting that Plaintiffs would need to depose Defendants to get answers. *See, e.g.* Dkt. 61 at 6 (discussing both Defendants' insufficient responses to Interrogatories 13 and 24); Dkt. 64.[4] And

---

[3] Defendants point to the Parties' December 2024 joint letter to the court, Dkt. 45, as evidence of Plaintiffs' agreement to stay depositions indefinitely, pending resolution of the motion to dismiss. Plaintiffs neglected to catch and correct an error about the agreement regarding depositions in that letter, drafted by Defendants. Dkt. 45. We corrected this misunderstanding in the very next joint status letter, filed in February 2025. Dkt. 52.

[4] Defendants suggest that they have provided sufficient interrogatory responses on these topics and point to the "supplemental interrogatory responses" that they produced on October 13, 2025. These responses provided no new information about the contents of the press lists beyond what had already been provided, nor about when and whether Plaintiffs were removed from the press list. In response to Interrogatory 13, Defendant Wallace-Scalcione declaimed any more-specific recollection of whether and when she made changes to the press list and incorporated by reference Defendants' document production—a document production that Defendants *now refuse to*



Defendants' Rule 26 initial disclosures did not identify anyone but the Parties who was likely to have information relevant to the case. Last, a deposition will not significantly interfere with Fulop's governmental duties, since it is likely at this point that the deposition will not take place until after he has left office.

Nor does qualified immunity bar a deposition of Defendant Fulop while the motion to dismiss is pending. Dkt 80. This Court has already twice denied Defendants' request to stay discovery pending the outcome of their motion to dismiss, Dkt. 39, 71, making no exceptions for depositions. The Court was justified in doing so, because it is not and has never been the case that *all* discovery must be stayed whenever *any* claims in a case implicate questions of qualified immunity. *Crawford–El v. Britton,* 523 U.S. 574, 593 n. 14 (1998) ("neither [*Harlow v. Fitzgerald*] nor subsequent decisions create an immunity from *all* discovery"). Rather, district courts may exercise their "discretion to allow discovery to proceed on claims not subject to a qualified immunity defense while the Rule 12(b)(6) motion is pending, even if the information sought overlaps with claims subject to a qualified immunity defense." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 87 n.6 (3d Cir. 2025).

In this case, nearly all of the claims fall completely outside the realm of qualified immunity. Qualified immunity does not extend to official capacity claims. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Nor does it extend to personal capacity claims that seek injunctive or declaratory relief. *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006); *Harper v. Cnty. of Delaware*, 779 F. App'x 143, 147 n.5 (3d Cir. 2019). Plaintiffs stipulated that they would not seek compensatory damages in this case, Dkt. 68, leaving only the personal capacity claims for punitive damages and, potentially, nominal damages as presenting any qualified immunity question at all. Accordingly, this case is a textbook example of one where the court was entitled to allow depositions to go forward notwithstanding that a few claims raise the issue of qualified immunity.

Plaintiffs respectfully submit that the issue of Defendant Fulop's deposition requires judicial intervention and request that a schedule be set for briefing this issue, either through a motion to compel by Plaintiffs or a motion for a protective order by Defendants, as appropriate.

---

*complete* by providing the past versions of the press list that Plaintiffs requested and that Defendants previously agreed to provide. Dkt. 74. Defendant Fulop, likewise, has provided non-substantive answers to Plaintiffs Interrogatories regarding the use of the press list and whether Defendant Fulop directed or ratified the decision to exclude Plaintiffs from press communications. *See* Dkt. 61 at 6, Dkt. 64. To give two examples, his response to Interrogatory 24 merely makes unspecified reference to Defendants' document productions, and he objects to Interrogatory 17 and provides no answer on the grounds that the terms "Member of the Press" and "Press List" are vague.



Plaintiffs propose that moving papers be submitted by December 12, 2025 and any opposition papers be submitted by December 19, 2025.

## III.    Defendants' Position

**Written Discovery**

Plaintiffs' discovery demands are disproportionate to the needs of this case. Period.

This is a lawsuit that is time-barred, identifies no actionable harm (not receiving emails is not an actionable harm),[5] and, by Plaintiffs' own stipulation, seeks no compensatory damages. [Dkt. 68]. Plaintiffs have not identified a single way in which they have been harmed. They have not set forth how their blog-writing capabilities have been hindered. They have not explained how their alleged business has been harmed. Yet they continue to demand that Defendants collect and review thousands of pages of documents that are disproportionate to the needs of this case and are not necessary for its resolution.

Plaintiffs' only basis for asking this Court to compel this production is that it is "relevant." But the Federal Rules do not permit discovery simply because a party has labeled something "relevant." Rule 26(b)(1) makes clear that discovery must also be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Pro. 26(b)(1). Plaintiffs cannot meet this standard.

**<u>The amount in controversy is zero</u>**. Plaintiffs have never articulated how the documents they seek bear on any actual harm they claim to have suffered, because they cannot. They voluntarily abandoned their compensatory damages claim precisely because they have no

---

[5] Plaintiffs cannot use the power of this Court to compel Ms. Wallace Scalcione or Mayor Fulop to speak to them. *See The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006); *Bartley v. Taylor*, 25 F. Supp. 3d 521, 539 (M.D. Pa. 2014).



cognizable injury. Even assuming the requested materials have some marginal relevance, they are plainly not necessary to the resolution of any issue that remains in this case.

By contrast, the burden associated with Plaintiffs' requests is substantial—particularly now as Defendants and the entire Administration are in the midst of an extensive transition following Mayor Fulop's twelve years in office. Rule 26(b)(2)(C)(iii) requires the Court to limit discovery where a request is disproportionate to the needs of the case. Here, the burden is extraordinary while the benefit is negligible, if not nonexistent. Plaintiffs are therefore not entitled to the production they seek.

Plaintiffs are correct that Defendants previously indicated that they would provide additional information and a supplemental document production.[6] However, that was before the October 21, 2025, oral argument on the Motion to Dismiss, wherein Plaintiffs made certain concessions that confirmed Defendants' prior objections. Namely, that the additional materials sought are irrelevant, unduly burdensome, and disproportionate to the needs of the case.[7] *See* Fed. R. Civ. Pro. 26(b)(1).

Plaintiffs' assertion that Defendants have not raised the issue of Plaintiffs' deficient discovery is both inaccurate and unavailing. Plaintiffs have an ongoing discovery obligation to respond fully and accurately to discovery requests. Defendants, on numerous occasions, have raised the issue that Plaintiffs' assertion of a blanket journalistic privilege without providing any form of privilege log, is improper. It is puzzling why Plaintiffs would believe this issue is "resolved" when, to date, they still have not provided the required log as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure and they offer no explanation as to why one has not been produced.

In the October 13, 2025, joint status letter, [Dkt. 74], Plaintiffs state that they maintain their position set forth in the June 17, 2025, letter wherein they claim that certain supplemental requests

---

[6] Plaintiffs' claim that Defendants agreed to do so "only after the Court indicated it would rule on the many discovery failures Plaintiffs had presented to the Court unless Defendants cooperated in narrowing the disputes" is puzzling, and Defendants would ask that they point to where in the record the Court made any such statement. The Court's text order speaks for itself: the Court directed *both sides* to confer following submissions from *both parties*. Plaintiffs' mischaracterization is simply another attempt to cast Defendants as noncompliant despite Plaintiffs' own significant deficiencies in their productions.

[7] Plaintiffs take issue with the fact that this position was "never previously conveyed to Plaintiffs." Plaintiffs did not provide Defendants an opportunity to communicate a substantive update regarding the timing and scope of any supplemental production. On November 4, 2025, Defendants advised Plaintiffs that a response would be forthcoming. Plaintiffs, however, proceeded to file a letter with the Court. [Dkt. 78].



by Defendants were unduly burdensome and protected by the reporter's privilege. [Dkt. 61]. It is Defendants' position that these requests are not burdensome and are entirely proportionate to the needs of the case. But even setting this supplemental request aside: Plaintiffs asserted the reporter's privilege in seventeen out of the forty-two interrogatories and twenty-nine out of the sixty-eight requests for documents.

Importantly, not only have Plaintiffs not produced any sort of reporter's privilege log, but other than their bald assertion that they are journalists, **they have not produced any discovery to date to indicate that they are entitled to journalistic privilege**.[8]

For instance, outside of certain profit-and-loss forms, Plaintiffs have refused to produce any financial records, asserting that they are irrelevant because they are no longer seeking compensatory damages. But not seeking compensatory damages does not absolve Plaintiffs of their discovery obligations. The source of Plaintiffs' funding is an essential element in determining whether Plaintiff Jersey City Times is, in fact, a legitimate press organization. *See generally Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 83 (D.D.C. 2023), *aff'd sub nom. Ateba v. Leavitt*, 133 F.4th 114 (D.C. Cir. 2025) (a showing that a reporter is "editorially independent of any institution, foundation, or interest group that lobbies the federal government" is a requirement for White House press credentialing and access to the press gallery).

Plaintiffs further claim that they have sufficiently demonstrated that they are in fact the "press" by providing membership in press associations, so-called "news articles," and emails by Defendants and others recognizing them as "press." Each of these purported proofs is insufficient. To start, Plaintiffs provided a receipt of membership dues for New Jersey Press Association for 2024—but not for 2021, 2022, or 2023, the years during which they claim to have suffered harm. As for the "news articles," anyone can write and post a story online, but this does not establish press status. *See generally Ateba*, 706 F. Supp. 3d at 83. Finally, Defendants have repeatedly stated—long before Plaintiffs brought this lawsuit—that they do not consider Plaintiffs to be the press, making Plaintiffs' reliance on emails purportedly recognizing them as such unremarkable.

Even assuming Plaintiffs could establish that they are legitimate members of the press, the Third Circuit has recognized that a reporter waives his privilege here he has "fil[ed] suit to

---

[8] Plaintiffs' argument that they do not need to be a member of the press is puzzling to say the least, because their entire complaint hinges on the fact that they allege that they have not been treated the same as other press organizations.



vindicate his own rights." *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979). Accordingly, Plaintiffs have no basis for withholding documents on the grounds of reporter's privilege.

Finally, it is important to note that if Defendants ever have to file an answer, they may assert counterclaims or, at the very least, affirmative defenses regarding the frivolity of this lawsuit. Namely, that it was nothing more than a publicity stunt done to harm and embarrass Mayor Fulop and his gubernatorial campaign. Thus, if any of Plaintiffs' claims survive the Motion to Dismiss, fact discovery will necessarily need to be reopened.

**Depositions**

It is troubling that Plaintiffs continue to maintain that—despite their own representations to Defense Counsel and this Court—they never agreed to hold depositions in abeyance pending the Court's decision on the Motion to Dismiss. Plaintiffs were given multiple opportunities to correct this misstatement after Defendants raised it directly with them and pointed them to their prior filings. Rather than acknowledge the record, Plaintiffs are doubling down, attempting to reframe their prior representations as merely an "error," further entrenching themselves in a position that is patently inconsistent with what they previously told Defendants and the Court. Parties' representations to the Court carry weight, and Plaintiffs should not be permitted to recast theirs as "error" or, as they also state, a mere "compromise offer."

Plaintiffs repeatedly emphasize that the Court previously denied Defendants' request for a stay of discovery pending the resolution of their Motion to Dismiss. Yet they ignore that, in opposing the stay, they expressly represented to this Court that they would not conduct depositions until the Motion to Dismiss was resolved:

> As Judge Allen suggested at the June 25 conference, and plaintiffs offered to accept, a scheduling order could be entered with shorter deadlines for written discovery but providing an extended period for the conclusion of fact discovery so that **any depositions would not occur until after the resolution of the motion to dismiss**.

[Dkt. 34 (emphasis added)].

While Plaintiffs do not address this representation in this letter, they did address it in an email to Defense Counsel, claiming that this statement "merely reflects Plaintiffs' reiteration of a compromise offer" made during a status conference. [Dkt. 80, Ex. B (Email exchange between law student Brina Harden and attorneys for Defendants)]. Characterizing it as merely a



"compromise offer" that they could later walk back seemingly indicates that they used their opposition as leverage to convince the Court that a stay was unnecessary.

But later filings make clear that this was not seen as just a "compromise offer" rather than an agreement. Because it was expressly reiterated in the parties' December 5, 2024, joint status letter:

> Your Honors will recall that the Court set discovery deadlines [Dkt. 40] designed to allow for "paper" discovery to proceed while Defendants' motion to dismiss is pending, **with depositions to occur only after the Court rules on the motion** (and in the event the case is not dismissed as a result).

[Dkt. 40 (emphasis added)]. This letter was **reviewed and approved** by Counsel for Plaintiffs.

Plaintiffs now attempt to gloss over this fact by claiming, in a footnote, that they merely "neglected to catch and correct an error" and that they "corrected this misunderstanding in the very next joint status letter" filed **over two months later** on February 26, 2025. [Dkt. 52]. But the February joint status letter says absolutely nothing about this alleged "error," nothing about a prior misunderstanding, and nothing that remotely corrects the clear representation they previously made to this Court. [*Id.*].

It is clear what is happening here. From the start, this time-barred lawsuit has been nothing more than a publicity stunt and a smear campaign against Mayor Fulop. Now, just weeks away from Mayor Fulop's departure from office, Plaintiffs are attempting to manufacture urgency to force a deposition they are not entitled to take. Compelling a sitting mayor to testify—if it were even permitted—would generate far more public attention to their blog than the deposition of a private citizen. That is why they are attempting to rewrite the record. Plaintiffs' attempts to use our justice system to advance their own agenda by reneging on their representations to Defense Counsel and to this Court are deeply concerning.

Even if Plaintiffs hadn't agreed to hold depositions in abeyance until after the ruling on the motion to dismiss, they have no basis for deposing Mayor Fulop at this time—if ever. It is undisputed that Mayor Fulop is protected by the *Morgan Doctrine*.[9] *See United States v. Morgan*, 313 U.S. 409, 422 (1941); *8 Erie St. JC LLC v. City of Jersey City*, 19-CV-09351 JMV JRA, 2023 WL 3735949, at *3 (D.N.J. May 31, 2023) ("absent extraordinary circumstances, good cause exists to preclude the depositions of a high level government official"). Courts in this District have

---

[9] Further discussion of the *Morgan* Doctrine is set forth in Defendants' November 17, 2025, letter to the Court. [Dkt. 80].



repeatedly applied the *Morgan* Doctrine to mayors, including Mayor Fulop himself even where he was a party to the lawsuit. [Dkt. 80, Ex. C (Opinion and Order Granting Fulop's Protective Order)]; *see also 8 Erie St. JC LLC*, 2023 WL 3735949, at *3 (applying the *Morgan* Doctrine and denying plaintiff's motion to compel deposition of Mayor Fulop); *Buono v. City of Newark*, 249 F.R.D. 469 (D.N.J. 2008) (applying the *Morgan* Doctrine to Mayor Booker of Newark); *Stevenson v. City of Newark*, CV 20-18722-EP-AME, 2024 WL 1526102 (D.N.J. Apr. 9, 2024) (same to Mayor Baraka of Newark). Plaintiffs' argument that the Third Circuit has not addressed the *Morgan* Doctrine is irrelevant. *United States v. Morgan* is a Supreme Court decision, and courts in this District have consistently applied it to bar exactly this type of deposition.

Plaintiffs further assert that Defendants have "consistently declined to provide substantive responses to Interrogatory questions on these topics." This is blatantly false. Plaintiffs repeatedly demanded that Ms. Wallace-Scalcione supplement her interrogatory responses. Defense Counsel provided the clarification Plaintiffs sought and, on October 13, 2025, Ms. Wallace-Scalcione supplemented her responses. Yet Plaintiffs continued to press the same questions that they had been pressing for months and Defense Counsel ultimately advised Plaintiffs that they would not continue to litigate through interrogatories. Indeed, Plaintiffs had already used their allotted twenty-five interrogatories and their repeated follow-up questions were improper attempts to have second, third, and fourth bites at the apple.

Critically, the back-and-forth on interrogatories related solely to Ms. Wallace-Scalcione's responses—not Mayor Fulop's. To suggest that Defendants "consistently declined to provide substantive responses" is therefore a blatant mischaracterization made solely to bolster Plaintiffs' manufactured justification to depose Mayor Fulop.

Plaintiffs' attempt to sidestep qualified immunity is equally unavailing. Plaintiff asserts that qualified immunity is not applicable here because they are not seeking compensatory damages.[10] On the contrary, **qualified immunity is clearly applicable to both nominal and punitive damages**. *Hicks v. Feeney*, 850 F.2d 152 (3d Cir. 1988) ("Since [plaintiff] was not entitled to any judgement while qualified immunity remained open he could not obtain damages, nominal or otherwise, on th[e] record."); *Travillion v. Pennsylvania Dep't of Corr.*, 1:18-CV-02075, 2023 WL 6796538, at *37 (M.D. Pa. Oct. 13, 2023) (claims for money damages were "barred by qualified immunity, so compensatory, nominal, and punitive damages" were

---

[10] It is striking that Plaintiffs now rely on the fac that they are not seeking compensatory damages only when they believe it suits their argument. Each time Defendants have pointed to this as one of the reasons this lawsuit is frivolous, Plaintiffs have been quick to emphasize that they continue to seek nominal and punitive damages. [*See e.g.*, Dkt. 74 ("Plaintiffs also note that they continue to seek nominal and punitive damages in this case.")]. They cannot have their cake and eat it too.



unavailable for the claim); *see also Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) (qualified immunity analysis necessary where plaintiff raises claims for nominal and punitive damages).

And Plaintiffs cannot overcome qualified immunity here, especially given the holding of *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006), a case as analogous to this as one can get with the exception that the plaintiffs in that case were a legitimate news organization—not an opinion blog. Qualified immunity is an immunity from suit, not merely a defense to liability, and its protections are intended to shield public officials from the burdens and costs of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

Because the qualified immunity question is currently pending before the Court in the Motion to Dismiss, any deposition of Mayor Fulop or Ms. Wallace-Scalcione at this time would be premature. Depositions are among the most intrusive forms of discovery, and requiring them to proceed before the Court resolves the threshold immunity issue would directly contravene the Supreme Court's guidance and Third Circuit precedent that discovery should be stayed—or at least carefully limited—until the applicability of qualified immunity is determined. *See Harlow*, 457 U.S. at 818; *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

Lastly, Plaintiffs ask that the Court impose an expedited briefing schedule, requiring moving briefs by December 12, 2025, and oppositions just seven days later on December 19, 2025. Plaintiffs have offered no explanation as to why they seek such an expedited schedule. Indeed, it is both unnecessary and unreasonable, especially given that Plaintiffs are not seeking money damages, Defense Counsel are currently on trial, the holidays are swiftly approaching, and—most importantly—we are awaiting the Court's resolution of our Motion to Dismiss. Moreover, even if this case survives the Motion to Dismiss, it is clear from oral argument that it will not survive as currently pled and that the issues will be seriously narrowed. .

Defendants respectfully request that the Court order Plaintiffs to retract their notice of deposition of Mayor Fulop and refrain from issuing any additional deposition notices until the Court renders its decision on the Motion to Dismiss. This is fully consistent with the agreement reached between the parties and represented to the Court at the outset of discovery.

If Your Honor is inclined to set forth a briefing schedule, Defendants respectfully submit that a standard schedule is sufficient, and that an expedited schedule as Plaintiffs propose is unwarranted.

*     *     *

Should Your Honors have any questions, please do not hesitate to contact the undersigned, or Mr. Orlando for the Defendants, by telephone or e-mail.



Page 14 of 14

Respectfully submitted,

/s/ Flavio L. Komuves_____
WEISSMAN & MINTZ
220 Davidson Ave., Ste. 410
Somerset, New Jersey, 08873
Tel: (732) 563-4565
Email: FKomuves@weissmanmintz.com

/s/ Stacy Livingston_____
Stacy Livingston, *pro hac vice**
MEDIA FREEDOM &
 INFORMATION ACCESS CLINIC
YALE LAW SCHOOL[11]
127 Wall St. – Baker Hall - ISP
New Haven, CT, 06511
Tel: (203) 436-5824
Email: stacy.livingston@ylsclinics.org

*Counsel for Aaron Morrill and
Jersey City Times LLC*

/s/ Mallory B. Olwig
**MURPHY ORLANDO LLC**
494 Broad Street, 5th Floor
Newark, NJ 07102
molwig@murphyorlando.com
201.451.5000

*Counsel for Defendants*

Cc:    Jason Orlando, Esq. (via ECF)
       John Bartlett, Esq. (via ECF)
       Mallory Olwig, Esq. (via ECF)

---

[11] The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.